UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------- X **Docket#**
UNITED STATES OF AMERICA,     : 15-cr-348(ERK)(VMS)
                              :
        - versus -            : U.S. Courthouse
                              : Brooklyn, NY
MARTINEZ-ROJAS,               :
              Defendant       : April 6, 2017
-----------------------------X


TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Government:**      **Bridget M. Rohde, Esq.**
                            United States Attorney

                        BY: **Margaret Elizabeth Lee, Esq.**
                            Assistant U.S. Attorney
                            271 Cadman Plaza East
                            Brooklyn, NY 11201


**For the Defendant:**       **Richard H. Rosenberg, Esq.**
                            217 Broadway
                            Suite 707
                            New York, NY 10007



**Transcription Service:**   **Transcriptions Plus II, Inc.**
                            61 Beatrice Avenue
                            West Islip, NY 11795
                            rl.transcriptions2@gmail.com

                        **BY:** Theresa Roof




Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Criminal Cause for hearing, docket:

2  15-cr-348 United States of America v Martinez-Rojas.

3          Spanish Interpreter, can you please state your

4  name for the record.

5          MR. MICHELENE:  Federal certified Spanish

6  Interpreter, Mario Michelene.

7          THE CLERK:  Thank you.

8          Counsel, can you state your name for the

9  record.

10          MS. LEE:  For the United States, Maggie Lee.

11  Good afternoon, your Honor.

12          MR. ROSENBERG:  Good afternoon, your Honor.

13  Richard Rosenberg for Mr. Odillon Martinez-Rojas.

14          THE COURT:  All right.  Good afternoon.

15          All right. Good afternoon.  My name is Vera

16  Scanlon.  I'm one of the magistrate judges here.

17          Let's first start this change of plea hearing

18  with a question for the government.

19          Are there any victims of the offense and if so

20  has the government fulfilled its obligation to notify

21  them of the government hearing and their right to attend

22  and be heard?

23          MS. LEE:  Yes, your Honor.  There are victims

24  and the government provided them all with notification of

25  this hearing.

3

                         Proceedings

1           THE COURT:  Okay.  So there's nobody here.

2    Were you expecting anyone here today?

3           MS. LEE:  No, we weren't expecting anyone here

4    today.  We are expecting them to participate, either in

5    person or on paper at the time of sentencing.

6           THE COURT:  Okay.

7           All right.  So, Mr. Martinez-Rojas, I'm going

8    to ask my deputy to administer an oath to you.  So if you

9    would please stand.

10   O D I L O N   M A R T I N E Z - RO J A S, called as a

11   witness, having been first duly sworn testifies as

12   follows:

13          THE COURT:  All right.  So, Mr. Martinez-Rojas,

14   as you may know, this case has been assigned to a

15   district judge, Judge Korman.  Judge Korman is the judge

16   who will make the ultimate decision as to whether to

17   accept your guilty plea and if he does to sentence you.

18   So you have the absolute right to have the district

19   judge, Judge Korman, listen to your plea.  If you'd like

20   him to do that, there won't be any prejudice to you from

21   making that choice.  Do you understand?

22          THE DEFENDANT:  Yes.

23          THE COURT:  In today's proceeding, we're making

24   a recording so as we go along it would be helpful if

25   anyone who's speaking uses the microphone.  A transcript

4

Proceedings

1    of the proceeding will be prepared by a court reporter

2    and that transcript will be provided to the district

3    judge.  Judge Korman will review the transcript of

4    today's proceeding in connection with deciding whether to

5    accept your plea and if he does, with your sentence.

6             Do you wish to give up your right to have the

7    district judge listen to your plea and instead proceed

8    here before me today?

9             THE DEFENDANT:  Yes, that's fine.

10            THE COURT:  All right.  In connection with that

11   I have this form, which is a consent to have a plea taken

12   before United States Magistrate Judge Vera M. Scanlon.

13   That's me.  This form is written in English.  Was it read

14   to you or translated for you into Spanish?

15            THE DEFENDANT:  Yes.

16            THE COURT:  And did you go over it with your

17   attorney?

18            THE DEFENDANT:  Yes.

19            THE COURT:  And do you understand the form?

20            THE DEFENDANT:  Yes.

21            THE COURT:  And are you in agreement with what

22   it says in the form?

23            THE DEFENDANT:  Yes, it's fine.

24            THE COURT:  All right.  I'm going to point to

25   the first signature on the page and ask you, is that your

5

Proceedings

1    signature?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Mr. Rosenberg, below that, is that

4    your signature?

5              MR. ROSENBERG:  Yes, it is, your Honor.

6              THE COURT:  And, Ms. Lee, is that your

7    signature?

8              MS. LEE:  Yes, your Honor.

9              THE COURT:  All right.  So, Mr. Martinez-Rojas,

10   do you give your consent voluntarily and of your own free

11   will to proceed here before me today?

12             THE DEFENDANT:  Yes.

13             THE COURT:  And has anyone made any threats or

14   promises to you to get you to proceed here before me

15   today?

16             THE DEFENDANT:  No.

17             THE COURT:  All right. I'm going to explain a

18   little about how today is going to work.

19             Before I hear your guilty plea, I'm going to

20   have to explain to you some of aspects of the U.S.

21   criminal justice system.  I'm also going to have to ask

22   you a number of questions in order to assure myself and,

23   in turn, the district judge, that your plea is, in fact,

24   a valid plea.  As we go along today, if you don't

25   understand what I'm saying or you don't understand my

6

                              Proceedings

1   questions, please let me know and I'll try to clarify

2   what I said.

3              Do you understand that you have the right to be

4   represented by an attorney at trial and at every other

5   stage of the criminal proceedings, including this one?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do you understand that if you can't

8   afford an attorney, the court may appoint an attorney for

9   you?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Mr. Rosenberg, are you appointed

12  counsel?

13             MR. ROSENBERG:  I am CJA, yes, your Honor.

14             THE COURT:  All right.  As we go along today

15  Mr. Martinez-Rojas, if at any time you'd like to speak

16  with Mr. Rosenberg, let me know and I'll let you do so.

17  So if you need anything clarified, you could speak to

18  Mr. Rosenberg first and then you could speak to me or

19  he'll speak to me.  Do you understand?

20             THE DEFENDANT:  Yes.

21             THE COURT:  All right.  So Ms. Quinlan just

22  administered to you an oath in which you swore to tell

23  the truth.  So that means if you answer any of my

24  questions falsely, your answers may later be used against

25  you in a separate prosecution for the crime of perjury or

7

Proceedings

1   of making a false statement.  Do you understand?

2            THE DEFENDANT:  Yes.

3            THE COURT:  All right.  We're going to start

4   with some background questions.

5            What is your full name?

6            THE DEFENDANT:  Odilon Martinez-Rojas.

7            THE COURT:  Okay.  And how old are you?

8            THE DEFENDANT:  Forty-six years old.

9            THE COURT:  What's the highest level of

10   education that you completed at school?

11            THE DEFENDANT:  Sixth year of elementary

12   school.

13            THE COURT:  So how old were you when you

14   finished the sixth year?

15            THE DEFENDANT:  Twelve.

16            THE COURT:  And since then have you had any

17   formal education?

18            THE DEFENDANT:  No.

19            THE COURT:  And where did you finish your last

20   year of school?

21            THE DEFENDANT:  In Mexico.

22            THE COURT:  Okay.  What was the name of the

23   school?

24            THE DEFENDANT:  Benito Juarez.

25            THE COURT:  And where was it located in Mexico?

8

Proceedings

 1             THE DEFENDANT:  In Tlaxcala.

 2             THE COURT:  Okay.  All right.  A different kind

 3   of background question.

 4             Are you presently or have you recently been

 5   under the care of a doctor or a physician?

 6             THE DEFENDANT:  No.

 7             THE COURT:  Are you presently or have you

 8   recently been under the care of any mental health

 9   professional, such as a psychiatrist, psychologist or

10   social worker?

11             THE DEFENDANT:  No.

12             THE COURT:  Have you been hospitalized or

13   treated for a mental illness?

14             THE DEFENDANT:  No.

15             THE COURT:  Have you ever been hospitalized or

16   treated for an addiction to drugs or alcohol?

17             THE DEFENDANT:  No.

18             THE COURT:  In the past 24 hours have you

19   consumed any narcotic drugs?

20             THE DEFENDANT:  No.

21             THE COURT:  In the past 24 hours have you

22   consumed any alcohol?

23             THE DEFENDANT:  No.

24             THE COURT:  And in the past 24 hours have you

25   taken any kind of medication?

9

Proceedings

1          THE DEFENDANT: No.

2          THE COURT:  Is your mind clear as you sit here

3    today?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And do you understand these

6    proceedings?

7          THE DEFENDANT:  Yes.

8          THE COURT:  All right.

9          I'm going to direct a few questions to

10   Mr. Rosenberg.  Have you discussed this case with your

11   client?

12         MR. ROSENBERG:  I have, your Honor.

13         THE COURT:  And do you speak Spanish or have

14   you had the assistance of a Spanish --

15         MR. ROSENBERG:  No, your Honor.  I've always --

16         THE COURT:  -- interpreter?

17         MR. ROSENBERG:  -- had the assistance of an

18   interpreter.  In fact, I've had the superseding

19   indictment translated into the Spanish language by an

20   official court interpreter, it was a Carlos Finant (ph).

21   We've reviewed that and I've been -- also had the plea

22   agreement translated into Spanish by Mr. Finant and that

23   has been reviewed as well in the Spanish language with my

24   client.

25         THE COURT:  All right.  And we'll get to this

10

Proceedings

1  in a little more detail later this -- or this afternoon
2  but there were some additions, I know, made to the plea
3  agreement.  Did you review those in Spanish with your
4  client?
5          MR. ROSENBERG:  Yes, we have.
6          THE COURT:  And did you have the assistance of
7  the interpreter here today in doing that?
8          MR. ROSENBERG:  Correct, your Honor.
9          THE COURT:  All right.  Did you have any
10  difficulty communicating with your client at any point?
11          MR. ROSENBERG:  No, your Honor.
12          THE COURT:  In your opinion, is your client
13  capable of understanding these proceedings?
14          MR. ROSENBERG:  Yes, your Honor.
15          THE COURT:  In your opinion, does your client
16  understand the rights he'll be waiving by pleading
17  guilty?
18          MR. ROSENBERG:  Yes.
19          THE COURT:  Do you have any doubt as to your
20  client's competence to plead at this time?
21          MR. ROSENBERG:  No.
22          THE COURT:  Have you advised him of the
23  possible sentencing consequences, including the mandatory
24  minimum sentence that he may face?
25          MR. ROSENBERG:  I have, your Honor.

Proceedings

1          THE COURT:  Have you discussed with him the

2    operation of the sentencing guidelines?

3          MR. ROSENBERG:  I have.

4          THE COURT:  Okay.  All right. Mr. Martinez-

5    Rojas, have you had a sufficient opportunity to discuss

6    this case with your client -- sorry, with your attorney?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And did you do so with the

9    assistance of a Spanish language interpreter?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Did you have any difficulty

12    communicating with your attorney?

13          THE DEFENDANT:  No.

14          THE COURT:  Are you fully satisfied with the

15    representation and legal advice given to you in this case

16    by your attorney, Mr. Rosenberg?

17          THE DEFENDANT:  Yes.

18          THE COURT:  All right.

19          There's a document called the "superseding

20    indictment."  Sometimes I'm going to refer to it as the

21    "indictment."  I'm holding up my copy.  Have you read a

22    copy of this document in Spanish?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Okay.  Did you understand the

25    document?

Proceedings

1          THE DEFENDANT:  Yes.

2          THE COURT:  Did you review the superseding

3   indictment with Mr. Rosenberg?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Did you specifically review the

6   counts to which it's proposed that you are going to plead

7   guilty, which I understand are Counts 1 and Counts 23 of

8   the indictment?

9          THE DEFENDANT:  Yes.

10          THE COURT:  And did you also review with

11   Mr. Rosenberg the associated racketeering act?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Okay.  Okay.

14          Mr. Rosenberg, do you want me to read the

15   indictment or the parts of the indictment that relate to

16   your client?

17          MR. ROSENBERG:  No, your Honor, we would waive

18   that reading.

19          THE COURT:  Okay.  All right.

20          Mr. Martinez-Rojas, I'm going to review some

21   aspects of the U.S. criminal justice system as they

22   relate to you in this case.

23          The first and most important thing you should

24   understand is that you don't have to plead guilty even if

25   you are guilty.  Under the American legal system, the

13

Proceedings

1   government or the prosecution has the burden of proving

2   the guilt of a defendant beyond a reasonable doubt.  If

3   the prosecution or the government can't do that, or

4   doesn't do it, and they don't meet their burden of proof,

5   the jury, at your trial, has the duty to find the

6   defendant not guilty, even if the defendant is, in fact,

7   guilty.  Do you understand?

8            THE DEFENDANT:  Yes, yes, I do understand.

9            THE COURT:  So what that means for you is even

10   if you are guilty, you have a choice.  It's up to you to

11   decide what you want to do in your case.  It's not your

12   lawyer's choice or anyone else's choice.  You can

13   withdraw your previously entered plea of not guilty, and

14   plead guilty, as I'm told you wish to do, or you could

15   choose to go to trial in your case by persisting in your

16   plea of not guilty.  If you do that, you'll make the

17   government meet its burden of proving your guilt beyond a

18   reasonable doubt.  And as I just said earlier, if the

19   government doesn't carry its burden of proof, the jury

20   has the duty to find the defendant not guilty.

21            So you should know that it has sometimes

22   happened in American courtrooms, including in this

23   courthouse, that a jury has returned a verdict of not

24   guilty, although everyone else in the courtroom thought

25   the defendant had, in fact, committed the crime with

14

Proceedings

1    which he was charged.  What the jury was saying in that

2    case, or in those cases, was not that the defendant

3    wasn't guilty, but rather that the government had failed

4    to meet its burden or proving the defendant's guilt

5    beyond a reasonable doubt.  Do you understand that?

6            THE DEFENDANT:  Yes, I do understand.

7            THE COURT:  So for you, you have a choice, you

8    can say to the United States government, prove the case

9    against me, meet your burden of proving my guilt beyond a

10   reasonable doubt.  If you'd like to do that, when I ask

11   you how you plead, you should say "not guilty."  If you

12   persist in your plea of not guilty, under the

13   Constitution and Laws of the United States, you are

14   entitled to a speedy and public trial by a jury, with the

15   assistance of an attorney, on the charges contained in

16   the indictment, which in this case is the superseding

17   indictment, which has been filed with the court.  Do you

18   understand?

19           THE DEFENDANT:  Yes, I do understand.

20           THE COURT:  At a trial, you would be presumed

21   innocent, you would not have to prove your innocence; it

22   would be the government's burden to overcome the

23   presumption of innocence and prove you guilty by

24   competent evidence and beyond a reasonable doubt.  And as

25   I said earlier, if the government did not meet its burden

15

Proceedings

1   at trial, the jury would have the obligation to find you

2   not guilty.  Do you understand?

3            THE DEFENDANT:  Yes, I do understand.

4            THE COURT:  If you plead guilty, you're giving

5   up your right to have the United States government

6   satisfy its burden of proving your guilt beyond a

7   reasonable doubt.  Instead, you're admitting your guilt.

8   Do you understand that?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Were there to be a trial in your

11  case, the witnesses for the government would have to come

12  to court and testify in your presence.  Your attorney

13  would have the right to cross-examine the witnesses for

14  the government, to object to evidence offered by the

15  government, to offer witnesses and other evidence on your

16  behalf, as well as to subpoena or to compel witnesses to

17  come to court and testify.  Do you understand all those

18  rights?

19           THE DEFENDANT:  Yes, I do understand

20  everything.

21           THE COURT:  By pleading guilty, and if I

22  recommend that the district judge accept your plea and

23  that's what the district judge does, you're giving up

24  your right's that I've just described.  You're giving up

25  your right to confront the witnesses who would testify

16

Proceedings

1  against you, you're giving up your right to offer

2  evidence on your own behalf, you're giving up your right

3  to compel witnesses to come to court and to testify,

4  you're giving up your right to raise any defenses that

5  you may have.  Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Were there to be a trial in your

8  case, you would have the right to testify on your own

9  behalf, if you wanted to do so, but you could not be

10  required to testify.  Under the Constitution of the

11  United States, a defendant in a criminal case cannot be

12  forced to take the witness stand at his own trial, and

13  say anything that could be used against him to show he is

14  guilty of the crime or crimes with which he is charged.

15  So if you decided not to testify at your trial, the court

16  would instruct the jurors that the jurors could not hold

17  that fact against you.  This would be called "exercising

18  your right against self-incrimination."  Do you

19  understand?

20          THE DEFENDANT:  Yes.

21          THE COURT:  By pleading guilty, you would be

22  admitting your guilt, and giving up this right.  You'd be

23  giving up your right against self-incrimination.

24           If you plead guilty, I'm going to have to ask

25  you questions about what you did in order to satisfy

Proceedings

1   myself and, in turn, Judge Korman, that you are, in fact,

2   guilty of the charge to which you are pleading guilty.

3   You're going to have to answer my questions truthfully

4   and acknowledge your guilt.  And I'll remind you that

5   you've taken an oath to answer my questions truthfully.

6   Do you understand?

7           THE DEFENDANT:  Yes.

8           THE COURT:  In other words, it's not going to

9   be enough for you simply to say that you're guilty; you

10  are going to have to tell me what it is that you did that

11  makes you guilty of the charges to which you are pleading

12  guilty.

13          If you plead guilty, and I recommend that the

14  district judge accept your plea, and that's what he does,

15  you will be giving up your constitutional right to a

16  trial, and all of the other rights that I just discussed.

17  There will be not be a trial in your case.  If the

18  district judge accepts your plea, he will simply enter a

19  judgement of guilty based on your guilty plea.  Do you

20  understand that?

21          THE DEFENDANT:  Yes, I do understand.

22          THE COURT:  If after you are sentenced, you or

23  your attorney thinks the court has not properly followed

24  the law in sentencing you, you can generally appeal your

25  sentence to a higher court or to an appellate court.  But

18

Proceedings

1   by pleading guilty, you will not, except under very

2   limited circumstances, be able to challenge your

3   judgement of conviction by appeal or by collateral

4   attack.  Do you understand that?

5            THE DEFENDANT:  Yes, I do understand.

6            THE COURT:  Okay.  We're going to go over the

7   plea agreement in a minute, but I want to draw your

8   attention at this time to paragraph 4 of the plea

9   agreement, which is a limitation on this appellate right.

10  I'm going to read the relevant part of the paragraph

11  right now.

12           What is says is "The defendant agrees not to

13  file an appeal or otherwise challenge by petition,

14  pursuant to 28 United States Code, Section "2255" or any

15  other provision, the conviction or sentence, in the event

16  that the court imposes a term of imprisonment of 327

17  months or below."

18           So although you are usually allowed to appeal

19  your sentence if you think that the court has not

20  properly followed the law in sentencing you, your

21  agreement provides a limitation with regard to that

22  right.  Do you understand that?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Okay.  All right.

25           Are you willing to give up your right to a

19

Proceedings

1   trial and the other rights that I've just gone over?

2          THE DEFENDANT:  Yes.

3          THE COURT:  All right.  We're going to look at

4   the plea agreement.  I understand this was translated for

5   you from English to Spanish.  Is that correct?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Okay.  All right.

8          So I've marked your plea agreement as

9   Government Exhibit 3; that's because two of your

10   co-defendants have already pleaded and their plea

11   agreements have been marked Exhibits 1 and 2.  So yours

12   is going to be 3.

13          MR. ROSENBERG:  Judge, may I just say to be

14   precise --

15          THE COURT:  Yes.

16          MR. ROSENBERG:  The version that was translated

17   was the identical to the plea agreement that's in the

18   court except for the date that -- that the defendant had

19   a key part, that was changed and that's the only change

20   that was made other than the change that we made today

21   under that was signed and initialed by counsels and by

22   the defendant.  But I just want to be precise about that.

23   The plea agreement that was translated from English into

24   Spanish is identical, except for that -- to the plea

25   agreement before the court.

20

Proceedings

1          THE COURT:  All right.  So is that the

2   government's understanding as well.

3          MS. LEE:  That is.  The only other changes --

4   change is that actual U.S Attorney on the signature.

5          THE COURT:  Right.

6          MS. LEE:  But aside from that, my understanding

7   is exactly the same as the defense counsel's.

8          THE COURT:  Okay.  All right.

9          So, Mr. Martinez-Rojas, do you understand what

10  the attorney's were just telling me?

11         THE DEFENDANT:  Yes.

12         THE COURT:  All right.  All right.  Let me just

13  ask Mr. Rosenberg, were all formal plea offers by the

14  government conveyed to the defendant?

15         MR. ROSENBERG:  Yes, your Honor.

16         THE COURT:  All right.

17         So, Mr. Martinez-Rojas, I have the English

18  language copy here which has been marked as Exhibit 3.

19  And we just went over -- was this -- but let me make sure

20  from your perspective, was the plea agreement translated

21  for you from English to Spanish?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Okay.  And was that translation

24  done with the assistance of an interpreter and your

25  attorney?

Proceedings

1          THE DEFENDANT:  Yes, all the time.

2          THE COURT:  All right.  Do you understand all

3    of the terms of the plea agreement, which is Exhibit 3?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Does the written plea agreement

6    accurately represent the entire understanding or

7    agreement that you have with the government?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Has anyone made any promise or

10   assurance to you that's not included in the plea

11   agreement to persuade you to accept the plea?

12         THE DEFENDANT:  No, no.

13         THE COURT:  Has anyone threatened you in any

14   way to persuade you to accept the plea agreement?

15         THE DEFENDANT:  No.

16         THE COURT:  All right.  We're going to look at

17   the 13th page of the document.  In the middle of the page

18   it says, "I have read the entire agreement and discussed

19   it with my attorney.  I understand all the terms and I'm

20   entering into it knowingly and voluntarily."  Is that a

21   correct statement?

22         THE DEFENDANT:  Yes.

23         THE COURT:  All right.  Mr. Martinez-Rojas, I'm

24   going to hold up my copy, which is Exhibit 3; right below

25   the two sentences I just read is your name, and a

Proceedings

1   signature there.  Is that your signature?

2          THE DEFENDANT:  Yes.

3          THE COURT:  All right.  And then Mr. Rosenberg,

4   this is approved by, and then your signature, is that

5   your signature?

6          MR. ROSENBERG:   Yes.

7          THE COURT:  All right.  And then it says

8   "translated by Jose Carlos Finant."  Is that correct?

9          MR. ROSENBERG:  That was the individual court

10  interpreter that interpreted and translated it.

11         THE COURT:  All right.  And then Ms. Lee, on

12  the other side, up here, is that your signature?

13         MS. LEE:  It is.

14         THE COURT:  And then below that, there's a

15  signature from Ms. Margold (ph).  Is that her signature?

16         MS. LEE:  It is.

17         THE COURT:  And she's your supervisor, is that

18  correct?

19         MS. LEE:  She is.

20         THE COURT:  Okay.

21         MS. LEE:  One of many.

22         THE COURT:  One of many.  In this case, she's

23  your supervisor, right?

24         MS. LEE:  She is, she is certainly my

25  supervisor on this case.

23

Proceedings

1          THE COURT:  Okay.  All right.  Mr. Rosenberg,

2   have you read and reviewed with your client the written

3   plea agreement before the court, which is Exhibit 3?

4          MR. ROSENBERG:  I have.

5          THE COURT:  All right.  And communicating with

6   your client, is it correct you had the assistance of a

7   Spanish language interpreter?

8          MR. ROSENBERG:  Indeed, yes, your Honor.

9          THE COURT:  And does this agreement, Court

10  Exhibit 3, reflect your understanding of the entire

11  agreement that your client has entered into with the

12  government?

13         MR. ROSENBERG:  Yes, your Honor.

14         THE COURT:  All right.

15         Mr. Martinez-Rojas, do you understand that if

16  you fail to comply fully with your agreement with the

17  United States Government, the government will be released

18  from its obligations, but you will not be released from

19  your plea of guilty?

20         THE DEFENDANT:  Yes, yes, I understand.

21         THE COURT:  All right.  We're going to go over

22  some of the possible consequences to you with a regard to

23  a guilty plea.  These are outlined in paragraph 1 of the

24  plea agreement.

25         So it's my understanding that what's proposed

24

Proceedings

1  is you're going to plead guilty to Count 1 and Count 23

2  of the superseding indictment in this case.  Those two

3  counts charge you with a violation of some federal law,

4  particularly 18 United States Code, Section 1962c and

5  1591a.  As part of your guilty plea as proposed that

6  you're going to admit as racketeering acts, your

7  participation in sex trafficking of Jane Doe number 1,

8  that's included in racketeering acts 3(a) as well -- and

9  Count 7 of the superseding indictment.  As well as sex

10  trafficking of Jane Doe number 9, which is alleged is a

11  racketeering act, 11(a) and in Count 23.  So what I'm

12  going to tell you now about the possible sentencing

13  consequences are connected to those pleas.

14          The plea is with regard to those counts and

15  those racketeering acts.

16          With regard to Count 1, the maximum term of

17  imprisonment is life, the minimum term of imprisonment is

18  zero years.  The maximum supervised release term is five

19  years, it would follow any term of imprisonment.  If a

20  condition of release is violated, you may be sentenced

21  for up to five years, without credit for pre-release

22  imprisonment or time previously served on post-release

23  supervision.

24          While on supervised release, there may be many

25  restrictions on your liberty, even though you're no

25

Proceedings

1    longer incarcerated.  Those may include travel

2    limitations, requirements that you report to a probation

3    officer, and other limitations.

4              All right.  Do you understand what I've covered

5    so far, in terms of imprisonment, life, minimum term of

6    imprisonment, zero years and the terms of supervised

7    release?

8              THE DEFENDANT:  Yes, I do understand.

9              THE COURT:  All right.  Additional consequences

10   include possibly the following.  Maximum fine, the

11   greater of $250,000 or twice the gross gain or twice the

12   gross loss.  Do you understand that?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Restitution is mandatory in the

15   amount of -- full amount of each victim's loss as

16   determined by the court.  You're going to be charged $100

17   special assessment.  Do you understand those provisions?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Additionally, your plea of guilty

20   to these counts will likely result in your removal from

21   the United States.  This is described in paragraph 8 of

22   the plea agreement which is Court Ex -- sorry, is

23   government Exhibit 3.  I'm going to go over that,

24   paragraph 8 now.  It say's that "you recognize that

25   pleading guilty may have consequences with regard to any

Proceedings

1    immigration status you may have in the United States, if

2    you are not a citizen of the United States."  Under

3    federal law, a broad range of crimes, are what are call

4    "removable offenses," including those to which is

5    proposed that you are going to plead guilty.

6                Because you're pleading guilty to the

7    particular crimes of racketeering involving sex

8    trafficking and interstate prostitution, your removal

9    from the United States is presumptively mandatory.  But

10   you should know, the immigration consequences, including

11   removal, are the subject of a separate proceeding.  So

12   that no one here, not your lawyer, not the government's

13   lawyer, not the court can predict with certainty the

14   effect of your conviction on any immigration status you

15   have in the United States.  Do you understand that?

16               THE DEFENDANT:  Yes.

17               THE COURT:  All right.  Is it correct that you

18   affirm that you still want to go ahead with your guilty

19   plea regardless of any immigration consequences that your

20   plea may entail?  Even if your consequences are automatic

21   removal from the United States?

22               THE DEFENDANT:  Yes, yes.

23               THE COURT:  Other penalties include the

24   following.  Sex Offender registration, pursuant to the

25   "Sex Offender Registration Notification Act," which is

Proceedings

1  described in paragraph 11 of your plea agreement.  Did

2  you go over paragraph 11 with your attorney?

3           THE DEFENDANT:  Yes.

4           THE COURT:  And do you understand it?

5           THE DEFENDANT:  Yes.

6           THE COURT:  All right.  And is it a correct

7  statement, what's included in paragraph 11?

8           THE DEFENDANT:  Yes.

9           THE COURT:  Okay.  Additional consequences may

10 include, criminal forfeiture which is described in

11 paragraph 6 and 7 of the agreement.  Did you review

12 paragraphs 6 and 7 of your plea agreement?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Okay.  I'm going to hold -- well,

15 did you review it with your attorney?

16          THE DEFENDANT:  Yes.

17          THE COURT:  All right.  And is it correct,

18 paragraphs 6 and 7?

19          THE DEFENDANT:  Yes.

20          THE COURT:  All right.  I'm going to hold up my

21 copy of the plea agreement which includes a change to

22 paragraph 6.  It's been handwritten in and initialed.  So

23 what the second sentence of paragraph 6 now says is,

24 "that the defendant represents that he has disclosed all

25 his assets to the United States on the financial

28

Proceedings

1   statement entitled, United States Department of Justice

2   Financial Statement, here and after, it's called the

3   Financial Statement. A copy of which is to be provided

4   within 30 days."   Do you understand that sentence?

5           THE DEFENDANT:  Yes.

6           THE COURT:  All right.  I'm going to hold up

7   the copy and show it to you.  Is this -- I'm pointing to

8   the signature, or sorry, the initials at the bottom.  Are

9   those your initials?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Mr. Rosenberg, are your initials

12  here?

13          MR. ROSENBERG:  Yes.

14          THE COURT:  And then Ms. Lee, on behalf of the

15  United States, are those your initials next to --

16          MS. LEE:  Yes, your Honor.

17          THE COURT:  Okay.  All right.

18          Mr. Martinez-Rojas, do you understand that

19  parole has been abolished in the federal system?  So that

20  if you're sentenced to a prison term, you'll not be

21  released on parole, and you'll be required to spend the

22  entire period of that term in prison?

23          THE DEFENDANT:   Yes.

24          THE COURT:   All right.

25          I'm going to go over the possible sentencing

29

Proceedings

1  consequences of Count 23.  The maximum term of

2  imprisonment is life.  Do you understand that?

3         THE DEFENDANT:  Yes.

4         THE COURT:  The minimum term of imprisonment is

5  15 years.  Do you understand that?

6         THE DEFENDANT:  Yes.

7         THE COURT:  The minimum supervised release term

8  is five years.  The maximum supervised release term is

9  life, it would follow any term of imprisonment.  If a

10  condition of release is violated, you may be sentenced

11  for up to life without credit for prerelease imprisonment

12  or time previously served on post-released supervision.

13  If you commit any criminal offense, under particular

14  federal laws, Chapter 109(a), 110 or 117, or Title 18 of

15  the United States Code, Sections 1201 or 1509 for which

16  imprisonment for a term longer than one year can be

17  imposed, you shall be sentenced for not less than five

18  years and up to the maximum term of imprisonment for the

19  offense which is set forth in paragraph 1(a), which is

20  life.

21         All right.  I've already described for you what

22  supervised release is.  Do you understand this provision

23  of supervised release as it related to Count 23?

24         THE DEFENDANT:  Yes, yes.

25         THE COURT:  All right.  So additionally,

30

Proceedings

1  possible sentencing consequences include the following.

2  Maximum fine, the greater of $250,000 or twice the gross

3  gain or twice the gross loss.  Do you understand that?

4          THE DEFENDANT:  Yes, I do understand.

5          THE COURT:  Restitution is mandatory in the

6  full amount of each victim's losses as determined by the

7  court.  And additionally, you'll be charged $100 special

8  assessment.  Do you understand that?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Other penalties include, as I went

11  over for Count 1, and they apply in Count 23, your

12  removal from the United States, which is described in

13  paragraph 8 of the agreement, sex offender registration

14  pursuant to "Sex Offender Registration Notification Act,"

15  as set forth in paragraph 11.  And criminal forfeiture

16  which is set forth in paragraphs 6 and 7.  Do you

17  understand all of those provisions?

18          THE DEFENDANT:  Yes.

19          THE COURT:  All right.  I'm just going to go

20  back over one aspect of Count 23.  It has a minimum term

21  of imprisonment of 15 years.  Do you understand that

22  provision?

23          THE DEFENDANT:  Yes.

24          THE COURT:  All right.  Additionally, the

25  sentence imposed on each count may run consecutively.  Do

31

Proceedings

1    you understand that?  It means that there may be one

2    sentence on one count, you'd have to serve that sentence

3    and then the next term of imprisonment on the next count

4    might start.  So that's consecutive, one after the other,

5    and not both sentences at the same time.  So do you

6    understand what that provision means?

7              THE DEFENDANT:  Yes, yes, I do understand.

8              THE COURT:  All right.  Counsel, I'm just going

9    to ask you again.

10             Did you go over all of the sentencing, possible

11   sentencing consequences with your client?

12             MR. ROSENBERG:  I have, your Honor.

13             THE COURT:  And do you believe he understands

14   them?

15             MR. ROSENBERG:  I do, your Honor.

16             THE COURT:  In particular, do you believe he

17   understands that Count 23 carries a minimum term of

18   imprisonment of 15 years?

19             MR. ROSENBERG:  My client understands that,

20   your Honor.

21             THE COURT:  Okay.  All right.

22             Mr. Martinez-Rojas, I'm now going to go over

23   part of the -- an explanation of how the sentencing

24   process works.

25             The sentencing judge does not have complete

32

Proceedings

1   discretion to impose a sentence outside of the statutory

2   minimum and maximum sentences set forth in the statute.

3   Do you understand?

4           THE DEFENDANT:  Yes, I do understand.

5           THE COURT:  Okay.  In the sentencing process,

6   as a first step, the judge has to consider advisory

7   sentencing guidelines issued by the U.S. Sentencing

8   Commission to determine what's a reasonable sentence in a

9   criminal case.  As a second step, the judge has to

10  consider whether there are any factors present that would

11  allow the sentencing judge to depart from the advisory

12  sentencing guidelines.  The judge can depart upwardly or

13  downwardly.  Additionally, the judge has to consider the

14  factors that are set forth in a particular federal

15  statute, called 18 United States Code, Section "3553a."

16          The judge considers those factors against all

17  the facts and circumstances of his -- of your case, and

18  it may be that the judge decides to impose what's called

19  a "non-guideline sentence."  Do you understand that?

20          THE DEFENDANT:  Yes.

21          THE COURT:  All right.  We're going to go over

22  the sentencing guidelines as the lawyers think they're

23  going to apply to you.  But I want to make sure you

24  understand again, even though I've said this before, it's

25  a very, very important term, that Count 23 carries a

33

Proceedings

1  minimum term of imprisonment of 15 years.

2          MR. ROSENBERG:  I think it's important to point

3  out, your Honor, that the guideline calculation in the

4  plea agreement is the government's position and does not

5  reflect, necessarily the defendant's position.  And

6  that's provided for you in the guidelines -- in the plea

7  agreement.

8          THE COURT:  Okay.  So we're going to go over

9  that in a little bit in more detail and give me about a

10 minute.  But let me just make sure Mr. Martinez-Rojas,

11 you understand that Count 23 carries a minimum term of

12 imprisonment of 15 years?

13         THE DEFENDANT:  Yes, I do understand that.

14         THE COURT:  So as a practical matter, until the

15 date of sentencing, when the district judge has read the

16 transcript of today's proceeding, when he has a

17 presentence report about you, and he hears from you, your

18 lawyer, and the government, you cannot know with

19 certainty what the sentencing guidelines will be for your

20 case, and whether there will be grounds to depart from

21 them.  Or whether the court will impose a "non-guideline

22 sentence."   Do you understand?

23         THE DEFENDANT:  Yes, I do understand,

24         THE COURT:  All right.  As Mr. Rosenberg is

25 suggesting, there are some estimates that have been

34

Proceedings

1   prepared with regard to the guide -- the "sentencing

2   guidelines" as the lawyers may anticipate; they will

3   apply in your case.  So Im going to ask them in a moment

4   to give their best estimate of what the guidelines are

5   likely to say in your case.  You should note that these

6   estimates are based on the facts available to them at

7   this point, so you should keep in mind that the lawyers

8   could be wrong, that there could be information that they

9   don't have at this time.  Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  The plea agreement

12   includes the government's estimate as to what the

13   sentencing guidelines would be in you case.  I'm going to

14   ask Ms. Lee, on behalf of the governement, to review the

15   government's position with regard to what they anticipate

16   the advisory sentencing guidelines are going to be for

17   your case.  And then after that, I'll ask Mr. Rosenberg

18   to comment on what Ms. Lee says and his position with

19   regard to the sentencing guidelines.  So yes, please.

20          MS. LEE:  The government estimates an adjusted

21   offense level of 38.  This is based on a calculation that

22   includes Jan Doe Number 1, Jane Doe number 4, Jane Doe

23   Number 5, Jane Doe Number 6, Jane Doe Number 7 and Jane

24   Doe Number 9.  Each being calculated as a separate count,

25   which the government believes that is required under the

35

Proceedings

1    guidelines, as well as alien smuggling and money

2    laundering.

3           The estimate also includes a 2 point reduction

4    for a global reduction, assuming that all eight

5    defendants plead guilty by or on April 19, 2017.  As well

6    as a 3 point reduction for acceptance of responsibility,

7    provided that the defendant pleads guilty by today.

8           THE COURT:  All right.  I'm just following

9    along on page 6.

10          I'm sorry, just to make sure it's right, its 2

11   level reduction for the acceptance of his responsibility?

12          MS. LEE:  Two level for global reduction, and

13   that's set forth in calculating the total offense level

14   that's charted, and then as you see, we detailed the 2

15   point and then the 3rd point reduction, which will result

16   overall in a 38.  And assuming that the defendant has a

17   criminal history Category of 1, a guideline range of 235

18   to 293.

19          THE COURT:  All right.  We're going to get to a

20   few other paragraphs in the plea agreement in a moment

21   but I want to draw your attention, Mr. Martinez-Rojas,

22   that I said earlier, that the government's calculation

23   with regard to the sentencing guidelines is set forth in

24   paragraph 2, which is correct and Ms. Lee just

25   articulated the government's position, but it's also tied

36

Proceedings

1    to some of the statements that are in paragraph 10, which

2    is that this agreement is conditioned upon the defendants

3    who are listed in paragraph 10 entering guilty pleas,

4    pursuant to formal plea officers, on or before April

5    19th, and the acceptances as pleas by the district judge.

6           All right.  So Mr. Martinez-Rojas, do you

7    understand what Ms. Lee just said with regards to what

8    the government's position is with regard to the

9    anticipated sentencing guidelines in your case?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Okay.  All right.

12          So the bottom line of that calculation is that

13   if the government's calculations are correct, we would

14   anticipate the sentencing guidelines proposing a range of

15   imprisonment of 235 or 293 months, based on the

16   assumption that you fall in the criminal history Category

17   1.

18          Mr. Martinez-Rojas, do you understand what I

19   just said?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Okay.  Mr. Rosenberg, your thoughts

22   with regard to the sentencing guidelines that may be

23   applicable to your client?

24          MR. ROSENBERG:   Well, I understand the

25   calculation, your Honor, and I understand the

Case 1:15-cr-00348-ERK   Document 87   Filed 05/11/17   Page 37 of 51 PageID #: 312

Proceedings

1    government's position, we've reserved as to the plea

2    agreement that states "we reserve our right to contest

3    that enhancements in particular, at the time of

4    sentencing.  But I understand what the calculation

5    represents and how it was arrived.

6            THE COURT:  Okay.  All right.  I just don't

7    want to be unclear at all, despite the flexibility of the

8    guidelines, there's still a statutory mandatory minimum

9    in this case.

10           MR. ROSENBERG:  Well, that's apart from the

11   mandatory minimum --

12           THE COURT:  Um-hum.

13           MR. ROSENBERG:  -- so yes, your Honor.

14   We understand that there's a mandatory minimum of 15

15   years. --

16           THE COURT: Okay.

17           MR. ROSENBERG:  -- in any event.

18           THE COURT:  All right.  So you raise the other

19   arguments with the district judge when you get to the

20   sentencing date.

21           MR. ROSENBERG:  All right.

22           THE COURT:  So, Mr. Martinez-Rojas, do you

23   understand the estimate provided by the government is not

24   binding on the government, the probation department or

25   the court?

38

Proceedings

1          THE DEFENDANT:  Yes, I do understand that.

2          THE COURT:  And do you understand if this

3    estimate is wrong that will not be a basis for you to

4    withdraw your plea of guilty?

5          THE DEFENDANT:  Yes, I do understand.

6          THE COURT:  Do you understand your ultimate

7    sentence could turn out to be different and higher from

8    any estimate your attorney or the government may have

9    given you?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand that because of

12    other statutory sentencing factors, the district judge

13    may impose a sentence that's even higher than the one

14    called for by the advisory sentencing guidelines?  And if

15    that turned out to be the case, you would not be

16    permitted to withdraw your guilty plea, simply because no

17    one could tell you in advance what your sentence would

18    be?

19          THE DEFENDANT:  Yes, yes, I do understand.

20          THE COURT:  All right.  So what's being

21    proposed here is that you're going to plead guilty to

22    some felonies.  If your plea is accepted and you're

23    adjudged guilty of the felonies, to the extent you have

24    certain civil rights in the United States, your

25    adjudication may result in the deprivation of those civil

Proceedings

1    rights.  Some of those civil rights only apply to U.S.

2    citizens, but rather than go into whether you are or

3    aren't a U.S. citizen, I want you to just know, that your

4    adjudication as guilty of the felonies may result in the

5    deprivation of such rights.

6              All right, so I've gone over with you many of

7    the possible consequences if your plea of guilty is

8    accepted.  Do you understand these possible consequences?

9              THE DEFENDANT:  Yes, I do understand.

10             THE COURT:  Did you review them with your

11   attorney?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Did you have a sufficient

14   opportunity to consult with your attorney about them?

15             THE DEFENDANT:  Yes, yes.

16             THE COURT:  All right.  Do you have any

17   questions for me before we continue?

18             THE DEFENDANT:  No.

19             THE COURT:  Okay.  All right. I'm going to turn

20   to the lawyers for a little bit.

21             All right, so for Ms. Lee, on behalf of the

22   government, we are prepared to prove at trial all of the

23   elements of the counts against the defendant?

24             MS. LEE:  Yes, your Honor.

25             THE COURT:  All right.  And this morning you

40

Proceedings

1   gave me a copy of an outline of the statutes and

2   essential elements of the counts in this Rendon-Reyes

3   case.

4              Defendant's counsel, do you have a copy of that

5   document?

6              MR. ROSENBERG:  Yes, I was handed that this

7   morning, your Honor.

8              THE COURT:  All right.  Did you have a

9   sufficient opportunity to look at it?

10             MR. ROSENBERG:  Yes.

11             THE COURT:  All right.  So Ms. Lee, are the

12  elements of the offenses that to which it's proposed the

13  defendant's going to plead guilty set forth on these

14  pages?

15             MS. LEE:  They are, your Honor.

16             THE COURT:  Okay.  All right.

17             So what evidence would the government offer at

18  trial in order to show the defendant's guilt of the

19  counts against him in the superseding indictment?

20             MS. LEE:  The governement, based on victim

21  testimony, wire transfer records, Title 3 wire tap as

22  well as a number of other border crossing and documentary

23  records, would establish that the defendant was a member

24  of the Rendon-Reyes trafficking organization, which was a

25  criminal organization that operated in Queens, Atlanta,

41

Proceedings

1    Alabama and Mexico and other locations.  And that the

2    organization was involved in a variety of criminal

3    activities, including, sex trafficking of women and minor

4    girls; that their enterprise trafficked women from Mexico

5    into the United States, and throughout the United States,

6    affecting interstate commerce and that the defendant was

7    a member of that enterprise.

8            The government would further prove with respect

9    to what the defendant intends to plead guilty today, with

10   respect to Racketeering Act 3(a), that in or about and

11   between December 2004 to December 2016, the defendant

12   knowingly transported and recruited Jane Doe number 1

13   into the United States from Mexico using force, fraud and

14   coercion, and with respect to Racketeering Act 11(a) as

15   well as Count 23, the government would prove that in

16   between April 2010 and June 2014, the defendant, through

17   force, fraud and coercion, caused Jane Doe number 9 to be

18   brought from Mexico to the United States for the purposes

19   of prostitution.

20           THE COURT:  All right, Mr. Martinez-Rojas, do

21   you understand what Ms. Lee just said on behalf of the

22   governement?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Okay. All right.  Mr. Rosenberg, do

25   you agree that the government would be able to prove the

42

Proceedings

1  defendant's guilt at trial based on the evidence just

2  described by the governement?

3             MR. ROSENBERG:  Yes, your Honor.

4             THE COURT:  All right.  Do you know of any

5  reason why the defendant should not plead guilty?

6             MR. ROSENBERG:  No, your Honor.

7             THE COURT:  Are you aware of any legal --

8  viable legal defenses to the charges against him?

9             MR. ROSENBERG:  No, your Honor.

10            THE COURT:  In your opinion, is this plea in

11 your client's best interest.

12            MR. ROSENBERG:  Yes, your Honor.

13            THE COURT:  Okay.  All right.  So let's just go

14 back briefly to the plea agreement.  I wanted -- I had

15 said we would go over the rest of the paragraphs.

16            So, Mr. Martinez-Rojas, in reviewing government

17 Exhibit 3, which is your plea agreement, I've highlighted

18 some paragraphs but the entire agreement is your

19 agreement with the United States Government.  So let me

20 just confirm.

21            Do you understand your agreement with the

22 government?

23            THE DEFENDANT:  Yes.

24            THE COURT:  All right.  And did you have

25 sufficient opportunity to review it with Mr. Rosenberg,

Proceedings

1   your attorney?

2           THE DEFENDANT:  Yes.

3           THE COURT:  All right.  So as I've mentioned

4   earlier, what the plea agreement says is that it's

5   proposed that you're going to plead guilty to the Counts

6   1 and 23 of the superseding indictment.

7           So are you ready to plead at this time?

8           THE DEFENDANT:  Yes.

9           THE COURT:  Do you need an opportunity to speak

10  with Mr. Rosenberg before you do this?  Before you enter

11  your plea?

12          THE DEFENDANT:  No, everything is fine.

13          THE COURT:  Okay,  All right.

14          So, Mr. Martinez-Rojas, with regard to Count 1

15  of the superseding indictment in this case, how do you

16  plead, "guilty or not guilty?"

17          THE DEFENDANT:  I didn't understand, could you

18  repeat the question?

19          THE COURT:  With regard to Count 1 of the

20  superseding indictment how do you plead, "guilty" or "not

21  guilty?"

22          THE DEFENDANT:  Guilty.

23          THE COURT:  And with regard to Count 23 of the

24  superseding indictment, how do you plead, "guilty" or

25  "not guilty?"

44

Proceedings

1            THE DEFENDANT:  Guilty.

2            THE COURT:  All right.  Let me briefly ask

3    Mr. Rosenberg, with regard to the allocution, is your

4    client going to allocute to the two counts separately or

5    in a unified allocution?

6            MR. ROSENBERG:  Yes, we can combine it, your

7    Honor.  My client and I, in preparation for today, have

8    gone over the elements and gone over his participation in

9    the offenses that he's pleading guilty to.  We've

10   prepared a written allocution with the court's permission

11   and my client read from that.

12           THE COURT:  Yes.

13           MR. ROSENBERG:  We combined both counts.

14           THE COURT:  All right.  That's fine.

15           So, Mr. Martinez-Rojas, in your own words,

16   please tell me what it is that you did, such that you

17   are, in fact, guilty of Count 1 and Count 23 of the

18   superseding indictment.

19           THE DEFENDANT:  I'm gonna read from this.

20           THE COURT:  Yes, that's fine.  Mr. Rosenberg

21   mentioned that to me.  Thank you.

22           Wait.  I'm sorry.  I'm going to interrupt you

23   One second.

24           We need it to be translated back now from

25   Spanish to English into the record, so if you can go a

45

Proceedings

1   little slower and take some breaks.

2         THE DEFENDANT:  Within the times mentioned in

3   the indictment, I was a member of family organization.

4   And I participated in it helping to achieve the goals and

5   purposes of that organization.  And I was down in an

6   agreement with other people in the organization that we

7   were going to bring foreign women into the United States

8   by smuggling them.  Including Queens, New York.

9         I helped smuggle these women crossing state

10  borders with the purpose of the organization becoming

11  richer through their work, through the work as

12  prostitutes in this country.  Including Queens, New York.

13        In particular, I influenced Jane Doe's number 1

14  and number 9, to engage in prostitution in based -- based

15  on making false promises to them.  And in such a way,

16  convincing them to become prostitutes, when on such

17  occassions they didn't want to do it.  That's it.

18        THE COURT:  All right.  When you say the dates

19  in the indictment, is that between 2004 and 2016?  Is

20  that correct?

21        MR. ROSENBERG:  I believe so, your Honor.

22        THE DEFENDANT:  Yes.

23        THE COURT:  All right.  I'm just comparing what

24  you said to the elements.

25        When you mentioned the family organization, is

46

Proceedings

1    that Rendon-Reyes family that's mentioned and discussed

2    in the indictment?

3             THE DEFENDANT:  That's right.

4             THE COURT:  Okay.  And when you brought the

5    women into the United States, did you bring them from

6    Mexico?  Or participate in bringing them from Mexico?

7             THE DEFENDANT: Yes, from Mexico.

8             THE COURT:  All right.  Mr. Rosenberg, do you

9    want your client to add anything else to the record?

10            MR. ROSENBERG:  No, your Honor.

11            THE COURT:  All right.  For the government, is

12   that a sufficient allocution?

13            MS. LEE:  It is, your Honor.

14            THE COURT:  Okay.  All right.

15            Mr. Martinez-Rojas, let me ask you a few other

16   questions.

17            Are you pleading guilty voluntarily and of your

18   own free will?

19            THE DEFENDANT:  Yes.

20            THE COURT:  Has anyone made any threats to

21   induce you to plead guilty?

22            THE DEFENDANT:  No.

23            THE COURT:  Other than the promises contained

24   in the written agreement, which is government Exhibit 3

25   that you have entered into with the government, has

47

Proceedings

1   anyone made any other promises to induce you or to get

2   you to plead guilty?

3           THE DEFENDANT:  No, nobody.

4           THE COURT:  Has anyone made any promise to you

5   as to what your final sentence will be?

6           THE DEFENDANT:  No.

7           THE COURT:  Are you pleading guilty of your own

8   free will because, you are, in fact, guilty of Counts 1

9   and Counts 23 of the superseding indictment?

10          THE DEFENDANT:  Yes, that's right.

11          THE COURT:  Okay.  All right.

12          Based on what's been said here today by counsel

13  and by Mr. Martinez-Rojas, I believe that he is fully

14  competent, I believe he's capable of entering an informed

15  plea, I believe he's acting voluntarily, I believe he

16  understands the charges against him, that he understands

17  his rights, and that he understands the consequences of

18  his plea.  I also believe there's a factual basis on the

19  record to support each of the elements of the offense as

20  to Count 1 and Count 23 of the indictment.

21          So I therefore recommend that the district

22  judge, Judge Korman, accept Mr. Martinez-Rojas plea of

23  guilty to Counts 1 and 23 of the superseding indictment.

24          All right.  So as I mentioned earlier, Mr.

25  Martinez-Rojas, there's going to be a report prepared

48

Proceedings

1   about you that will be given to the district judge for

2   his consideration in connection with your sentence.  So I

3   encourage you to cooperate when that report is being

4   prepared.

5        Mr. Rosenberg, would you like to be a part of the

6   interview process and the --

7             MR. ROSENBERG:  I would, your Honor.

8             THE COURT:  All right.  So we'll let probation

9   know that.  All right.  Just for the record, I'm going to

10  give the original of this agreement back to Ms. Lee, to

11  the government, so she's going to hold government Exhibit

12  3.  I'll just remind you that the financial statement

13  needs to be provided to make that plea agreement

14  complete.

15            All right.  My understanding is your client is

16  going to remain in custody.  Is that right?

17            MR. ROSENBERG:   Yes.

18            THE COURT:  There's no bail application?

19            MR. ROSENBERG:  No, your Honor.

20            THE COURT:  All right.  And are there any

21  medical issues that need attention?

22            MR. ROSENBERG:  No, your Honor.

23            THE COURT:  Anything else that we've covered

24  here?

25            MR. ROSENBERG:  I think we're good, your Honor.

49

Proceedings

1    THE COURT:  Okay, so we've been trying to

2    schedule the rest of the pleas because obviously, this --

3    we went over earlier, involved a global plea so just for

4    the record, as soon as Ms. Lee can give us an update to

5    the scheduling.  I know you were talking with me and Ms.

6    Quinlan earlier about it.  But let's just put it on the

7    record as to the progress of the scheduling.

8    MS. LEE:  At this point, we have five of the

9    eight scheduled, and are very hopeful to get the

10   remaining scheduled in time, if not, a day or so after,

11   which the government would not -- the government would

12   think is fine.

13   THE COURT:  All right.  It satisfies the April

14   19th --

15   MS. LEE:  It satisfies the April 19th date if

16   we have to push it a couple of days just because of

17   scheduling issues.

18   THE COURT:  All right.  But we're working, and

19   -- my deputy is working with you to get it scheduled --

20   MS. LEE:  That's very helpful.

21   THE COURT:  -- as close as we can by the 19th.

22   MS. LEE:  By the 19th.

23   THE COURT:  Okay.

24   All right, any other issues that need to be put

25   on the record today?

50

Proceedings

1          MR. ROSENBERG:  Nothing further from us, your

2     Honor.  Thank you.

3          THE COURT:  All right.  Thank you.

4          All right.  Take care Mr. Martinez-Rojas.

5     Thanks to the interpreter for doing that very long

6     session.

7          MS. LEE:  Thank you, your Honor.

8          MR. ROSENBERG:   Thank you.

9          (Matter concluded as of this date)

10                    -o0o-

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

51

# C E R T I F I C A T E

I, ROSALIE LOMBARDI, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this 9th day of May, 2017.



Rosalie Lombardi
Transcription Plus II