# RICHARD H. ROSENBERG
### ATTORNEY AT LAW

217 BROADWAY　　　　　　　　　　　　　　　　　　　　　　　　　TEL: 212-586-3838
SUITE 707　　　　　　　　　　　　　　　　　　　　　　　　　　　FAX: 212-962-5037
NEW YORK, NEW YORK 10007　　　　　　　　　　　　　　　　　richrosenberg@msn.com

October 15, 2018

Hon. Edward R. Korman
United States District Court
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York   11201

**Re: United States v. Odilon Martinez-Rojas**
**15 Cr. 348 (S1) (ERK)**

Dear Judge Korman:

　　Please accept this letter and the annexed exhibits as defendant Odilon Martinez-Rojas' (hereinafter, at times, "Odilon") sentencing memorandum. Mr. Martinez-Rojas is scheduled to be sentenced on October 24, 2018 following his guilty pleas to counts one and twenty-three of the indictment charging him with violations of 18 U.S.C. §§ 1962 ( c ) (Racketeering) and 1591 (a) (participation in a sex trafficking conspiracy).

　　As part of the defendant's plea Mr. Martinez-Rojas admitted guilt with respect to Racketeering Acts 3(a) and 11(a) . Racketeering Act 3(a) charged the defendant with sex trafficking victim Jane Doe #1 in 2004-2006 along with Jovan Rendon-Reyes and his brother, Severiano Martinez-Rojas in the Eastern District of New York and elsewhere. Racketeering Act 11(a) charged the defendant with sex trafficking victim Jane Doe #9 between 2010 and 2014, along with his brother Severiano, in the Northern District of Georgia and elsewhere.

　　As alleged in the indictment this was a multi-state conspiracy involving in addition to New York, Texas, Alabama, Georgia, Arizona and "elsewhere" that took place over the years 2004-2015. This indictment covers a number of different victims of crimes perpetrated by members of this family organization. One of the victims in this case was a victim in the Georgia case as well ( Jane Doe #4).

　　Odilon Martinez-Rojas is currently serving a sentence of 262 months that was imposed in the Northern District of Georgia on January 21, 2015 (13 Cr. 128) based on his guilty pleas to the six counts in which he was named, charging him with conspiracy, along with his brother Severiano

Martinez-Rojas[1] and another, to commit Sex Trafficking and Encouraging and Inducing Illegal Entry in violation of 18 U.S.C.§ 1591 (a), (b) (1) and 8 U.S.C. § 1324 (a) (1) (A) (iv). Martinez-Rojas was arrested on May 21, 2013 in that case and remanded. He has been in continuous custody since that date.

By the terms of the plea agreement with the government in this case, it is stipulated that "because the term of imprisonment the defendant is currently serving involved conduct which is relevant to the instant offenses of conviction and which results in an increase in the offense level for the instant offense (see §5G1.3), the government agrees not to advocate for the sentence in this case to run consecutively to any sentence is currently serving". ( Plea agreement p. 3). Similarly, the Probation Department has also taken the position that since the offenses for which the defendant is currently serving is conduct relevant to the instant offenses, the sentence imposed here should run concurrent to the remainder of the undischarged remainder of the defendant's previously imposed sentence per U.S.S.G.§5G1.1.3(b)(2). ( PSR Addendum ¶175).

For the reasons that follow, it is respectfully submitted that a sentence of fifteen years, the mandatory minimum required by statute for violating 18 U.S.C. §1591 (a) (Sex Trafficking), to run concurrent with the defendant's current sentence of 262 months, is "sufficient, but not greater than necessary" to meeting the sentencing goals of 18 U.S.C. § 3553 (a). Such a sentence will ensure that the defendant will receive credit by the Bureau of Prisons for the term of imprisonment thus far served by the defendant for relevant conduct in the Georgia case. *See,* U.S.S.G.§5G1.3 (b) (2).

Moreover, such a sentence will avoid any potential sentence disparity among the defendants in this case.

*The Advisory Sentencing Guideline Range*

The advisory guideline calculations in the plea agreement and the PSR differ. Under the plea agreement, the government calculated the advisory guideline range taking into account victims not only named in the counts of conviction but victims named in other counts and racketeering acts involving the defendant. The calculation included certain enhancements the government estimated to be applicable to each. The calculation also included a two level global plea reduction (U.S.S.G. §5K2.0) and a three level reduction for acceptance of responsibility. This resulted in an adjusted offense level 38 with an advisory guideline range of 235-293 months imprisonment. Under the terms of the agreement the defendant reserved the right to contest the guideline estimate contained therein.

---

[1] Severiano Martinez-Rojas was a fugitive when the defendant pleaded guilty and later sentenced. Since his subsequent extradition, Severiano pleaded guilty to Sex Trafficking under Count One of the Georgia indictment before Magistrate Judge Scanlon in the Eastern District of New York pursuant to Rule 20.

The Probation Department's calculation resulted in a much higher range of 324-405 months imprisonment based on an adjusted offense level of 41. Initially we note that the PSR's calculation did not include the two level reduction for a global plea which, if included, would have resulted in an adjusted offense level of 39 with an advisory sentence range of 262-327 months imprisonment.

The differences between the two calculations (other than an addition error at unrevised PSR ¶85 pertaining to Jane Doe #5's calculation which has been addressed by the Probation Department and corrected ) are additions in the PSR for vulnerable victims that are not contained in the plea agreement as to Jane Doe #5 (PSR ¶82), Jane Doe #6 (PSR ¶ 88), and Jane Doe #7 (PSR ¶ 94).

In addition, the PSR's <u>Ruggiero</u> conduct relating to Alien Smuggling and Transportation (Counts One and Two and Racketeering Act 1) resulted in an adjusted offense level of 25 (PSR ¶ 116-124) as opposed to the government's estimate of level 15 (Plea Agreement p.5). This can be attributed to enhancements contained in the PSR that were not included by the government. One can only posit that the government by not adding these enhancements was of the view that it could not sustain its burden of proof with the regard to the enhancements or involved specific conduct not attributable to the defendant. We ask the court not to adopt the PSR calculation with regard to Alien Smuggling and Transportation.

Similarly, with regard to Money Laundering the PSR's calculation arrives at a base offense level of 36 (PSR ¶ 130) as opposed to the government's estimate of a base level 34. This too, is attributable to the PSR's enhancement inclusions not considered by the government. As with the Alien Smuggling and Transportation calculation above we urge the court to accept the implicit recognition by the government that it could not sustain its burden of proof with respect to enhancements counted in the PSR.

As mentioned, the plea agreement permits the defense to challenge the advisory guideline calculation contained in the plea agreement. In that regard we take exception to the enhancements for vulnerable victim (U.S.S.G.§ 3A1.1 (b) (1) ) contained throughout the plea agreement and the PSR.

U.S.S.G. §3A1.1(b) (1) provides a two level enhancement if the defendant knew or should have known that a victim of the offense was "unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct." U.S.S.G. §3A1.1 Commentary 2.

In <u>United States v. McCall</u>, 174 F.3d 47 (2d Cir. 1998) the Second Circuit examined the section and found that more is required than simply class based generalizations. The Court held that "the correct test calls for an examination of the individual victims' ability to avoid the crime rather than their vulnerability relative to other potential victims of the same crime". <u>United States v. McCall</u> at p. 50. Moreover, the Court found fault with the lower court's reliance upon, without further particularized inquiry, the age of some of the victims and other characteristics, when no characteristic alone demonstrated a particular vulnerability to the crime involved.

3

The McCall Court further cautioned against class generalizations by holding that membership alone in a particular class of victim is not necessarily sufficient for the enhancement to apply. There must be specific findings of a particular vulnerability. United States v. McCall, *supra.*

Accordingly, a review of case law interpreting this guideline finds cases that have rejected this enhancement based on age alone ( United States v. McCall *supra;* United States v. Vega-Iturrino, 565 F. 3d 430 (8th Cir. 2009), membership in a religious sect (United States v. Dupre, 462 F.3d 131 (2d Cir. 2006), economic dependency and abuse ( United States v. Sabatino, 943 F.2d 94 ( 1st. Cir. 1991 ); United States v. Castaneda, 239 F.3d 978 (9th Cir. 2001 ) (Mann Act prosecutions).

The Probation Department's rationalization for the application of this enhancement is grounded on its belief that it is appropriate because "an extra measure of deterrence and punishment is necessary" in this case. That is a reasoning that is found nowhere in the guidelines or case law as a basis for the applying the enhancement as opposed to the natural consequence of it being properly applied. The Probation Department's additional reasoning for the application of the enhancement is found in its rhetorical question " [i]f we are not protecting a group of young, poor, uneducated woman from an impoverished area of Mexico, who are we meant to protect". (PSR Addendum p.1). This is the very sort of class based generalization frowned upon by Second Circuit case law. Absent the particular findings of vulnerability required by controlling case law, the enhancement for vulnerable victim should not be applied throughout.

Should the court accept the objection to the vulnerable victim enhancement and otherwise accept the government's advisory guideline calculation, the highest adjusted offense level under the grouping analysis of U.S.S.G.§§ 3D1.1, 3D1.2, 3D1.3, 3D1.4 would be an offense level 36. Added to that would be the five level added adjustment for grouping, minus global and acceptance of responsibility reductions resulting in an total adjusted offense level of 36. Together with a Criminal History Category I, the advisory sentence range is 188-235 months imprisonment.

### *A Sufficient But Not Greater Than Necessary Sentence:*

As this court is well aware sentencing courts must now consider all of the 18 U.S.C. § 3553 (a) factors, not just the guidelines, in determining a sentence that is minimally sufficient to meet the goals of sentencing as set forth in 18 U.S.C. § 3553 (a) (2): justice, deterrence, incapacitation and rehabilitation. Gall v. United States, 128 S. Ct. 586 (2007); United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005).

The requirement that a court impose a "sufficient, but not greater than necessary" sentence to achieve those goals sets a limit on the sentence that a court may impose. Further, in determining whether and to what extent imprisonment is appropriate based on § 3553 (a) factors, the court is required to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582 (a).

4

In Pepper v. United States, 131 S. Ct. 1229 (2011), the Court emphasized that a sentencing judge assumes "an overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in § 3553(a)(2)." *Id.*, at 1242, 1243. *See also,* United States v. Dorvee, 616 F.3d 174, 182-83 (2d Cir. 2010) ("[u]nder §3553(a)'s 'parsimony clause,' it is the sentencing court's duty to 'impose a sentence sufficient, but not greater than necessary to comply with the specific purposes set forth' at 18 U.S.C. §3553(a)(2)"), *quoting* United States v. Samas, 561 F.3d 108, 110 (2d Cir. 2009).

As the Second Circuit explained in Dorvee:

> [e]ven where a district court has properly calculated the Guidelines, it may not presume that a Guidelines sentence is reasonable for any particular defendant, and accordingly, must conduct its own independent review of the §3553(a) sentencing factors. *See,* [United States v.] Cavera, 550 F.3d [180,]189 [(2d Cir. 2008) (en banc)].

616 F.3d at 182.

For the reasons that follow in this memorandum and for the 18 U.S.C.§ 3553 (a) factors present in this case we respectfully submit that the imposition of a sentence of 188 months, to be served concurrent with the sentence imposed in the Georgia case (13 Cr. 128 (AT) (N.D. Georgia), is appropriate to ensure a sentence that is minimally necessary to achieve the goals of sentencing and serve the interests of justice.

***The 3553 (a) Factors***:

*"What we see changes who we are"* Those are the apt words of JR, the great French urban artist and TED prize winner. What Odilon Martinez-Rojas saw growing up poor in Tenancingo, Mexico were the showy homes, extravagances and accouterments of wealth displayed by the pimps and the inter-generational family organizations involved in prostitution and sex trafficking.

Tenancingo, population 11,000, according to a 2015 article in The Guardian[2], is the most notorious hotspot in the state of Tlaxcala, the biggest source of sex trafficking in the U.S. As of 2015 five of the ten most wanted sex traffickers were from Tenancingo. It was estimated at the time of the article that one in ten people in Tenancingo was actively involved in sex trafficking. According to a 2010 University of Tlaxcala study, referred to in the article, one in five children want to grow up to be a pimp. Two thirds of the children know at least one relative or friend working as a pimp or trafficker.

---

[2] Tenancingo: the small town at the dark heart of Mexico's sex-slave trade, Lakhani, N., The Guardian, April 5, 2015.

Odilon Martinez-Rojas, now age 47, was born into this setting and raised under impoverished conditions. His biological father left his mother when she was pregnant with him and, so, he never met or knew him. He and his five siblings were brought up by their mother and step-father getting by with the bare necessities. The family didn't have the means for Odilon to continue his education past the sixth grade. At the age of 13 Odilon left school and worked in the fields with his mother, in a textile factory, as a ticket collector and, encouraged by family and peers, worked in the local prostitution business. As Odilon stated to Judge Totenberg in Georgia District Court at his sentencing, after his attorney told the court that Odilon's own mother had forced him into the prostitution business: " I didn't have the means to continue studying (sic) in my town. Many people do this kind of work, and I didn't have an option. I was very small. I was just 13. " Tr. at p.142, United States v. Martinez-Rojas, 13 Cr. 128 (AT) ECF Document 210 .

It is impossible to know to what extent Mr. Martinez-Rojas' sorry childhood, lack of education, and the outlaw cultural environment that was accepted - and his participation encouraged - by family and peers contributed to his Mr. Martinez-Rojas' ability and willingness not to engage in a lifestyle that evolved into sex trafficking. But it is not a far reach to presume that what Mr. Martinez-Rojas saw and experienced had influence over his thought processes and the emotional make-up needed, or lacking, to refuse to engage in such offenses.

With more than five years of imprisonment having gone by, Odilon has had time to go deep within himself, to reflect on his life and his life choices and to put in perspective and ponder his ill treatment of his victims, contrasted with the deep and abiding love for his own daughters. And he has learned from it. As he puts it in his letter : "I have come to realize what damage I inflicted on my victims by my conduct".( Exhibit A ). We hope, along with him, that his expressed commitment to give great effort towards becoming a better person succeeds.[3]

Whatever the sentence here imposed, Mr. Martinez-Rojas will be at least approximately 60 years of age before he released from prison and deported. He will have been separated by a continent the expanse of many years from family, other than co-defendants, missing the comings, goings and growth of loved ones. Ample time remains on his 21 year 10 month Georgia sentence to encourage and develop his rehabilitation, to protect the public from further criminality on his part, to deter both him and the would be traffickers back home and elsewhere from engaging in this offensive conduct, and to encourage respect for the rule of law

Finally, we have asked for imposition of a sentence of 188 months imprisonment with the hope that Your Honor's sentence will be imposed to run concurrent with the 262 month sentence being served to ensure that the Bureau of Prisons properly credits the defendant with his time already served on that sentence. (U.S.S. G.§5G1.3 (b) (1) and to avoid any potential sentence disparity among the defendants in this case.

---

[3] In addition to Mr. Martinez-Rojas' letter, family members have also submitted letters on his behalf. (Exhibits B - E)

6

Thank you for your consideration to the sentencing recommendation offered herein.

Respectfully submitted,

Richard H. Rosenberg

cc.: All parties (ECF)