UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES

– against –

**NOT FOR PUBLICATION**

**MEMORANDUM & ORDER**

ODILON MARTINEZ-ROJAS,

15-cr-348 (ERK)

Defendant.

KORMAN, *J.*:

Odilon Martinez-Rojas petitions for habeas relief and resentencing under 28 U.S.C. § 2255, seeks an adjustment of his sentence to afford him credit for time in custody, and moves for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c). ECF No. 240. First, defendant argues that the court should not have applied a serious bodily injury enhancement and he should therefore be resentenced within a lesser Guidelines range. Second, defendant argues that he has not received "full credit for his time in custody since his arrest on May 21, 2013," and his sentence should therefore be accordingly reduced. ECF No. 240 at 25-26; ECF No. 247. Third, defendant argues that he served 33 months of his sentence in the "unforeseeably harsh conditions" of the Metropolitan Detention Center ("MDC") in Brooklyn, and the court should therefore reduce his sentence under 18 U.S.C. § 3582(c). ECF No.

1

240 at 27.  I first address the serious bodily injury enhancement and then consider the defendant's other arguments for a sentence reduction.

##    I.    Serious Bodily Injury Enhancement

In April 2017, defendant pled guilty, pursuant to a plea agreement, to racketeering and sex trafficking crimes in violation of 18 U.S.C. §§ 1962(c) and 1591(a).  ECF No. 240-1; ECF No. 186; ECF No. 130 (Revised Presentence Investigation Report, hereinafter "PSR") ¶ 1.  The Guidelines calculation in defendant's plea agreement included a two-point serious bodily injury enhancement as to one of the victims.  ECF No. 240-1 at 4.  The Assistant U.S. Attorney advocated for a serious bodily injury enhancement under Guidelines § 2A3.1(b)(4)(B) as to Jane Doe #1 because the defendant "required her to get a large tattoo."  ECF No. 207 ("Sentencing Tr.") at 42-43; ECF No. 115 at 48.  At sentencing, on January 4, 2019, I engaged in a discussion with the AUSA as to whether a tattoo qualified as a serious bodily injury under the Guidelines.  Sentencing Tr. at 43-53.  During the course of this colloquy, defendant's counsel – Richard Rosenberg – objected on the basis that the tattoo removal "was an optional surgery" and that "[i]t was certainly not a life threatening injury . . . nor one that . . . interfered with a bodily function."  *Id.* at 47. I applied the enhancement "on the condition that [the government] provide me, before I enter the judgment with evidence of" the victim's "extreme physical pain." *Id.* at 51.  I then sentenced the defendant to 293 months in custody.  *Id.* at 75.

2

After sentencing, the U.S. Attorney submitted "a declaration from Christopher Davies of the Department of Homeland Security, Homeland Security Investigations, providing additional information regarding the pain Jane Doe #1 experienced as a result of the tattoo and tattoo removal process." ECF No. 135. Davies made his declaration based on an interview of Jane Doe #1, reflecting the "extreme pain" and "permanent scarring" she experienced. ECF No. 135-1 ¶¶ 3-4. The government additionally submitted a declaration from a dermatologist, who described that getting a tattoo "is painful for most people," and that "[t]attoo removal patients often describe the process of removing a tattoo as more painful than the process of receiving the tattoo." ECF No. 136-1 ¶¶ 2-3. The Judgment was filed on September 26, 2019. ECF No. 186.

In his § 2255 motion, defendant asserts new objections to the application of the serious bodily injury enhancement and asks the court to resentence defendant "if any [of those objections] would have persuaded the Court not to find that a tattoo qualified as a serious bodily injury." ECF No. 240 at 16. In defendant's plea agreement, he "agree[d] not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 . . . the conviction or sentence in the event that the Court imposes a term of imprisonment of 327 months or below." ECF No. 240-1 at 7. The appeal waiver provision also carved out an allowance for "a claim of ineffective assistance of counsel." *Id.* The Second Circuit has upheld the

3

enforceability of the defendant's appeal waiver and expressly noted that defendant could pursue ineffective assistance claims in the district court. *See United States v. Rojas*, 853 F. App'x 733, 737-38 (2d Cir. 2021). Thus, defendant's only route to a potential remedy here is by arguing that his counsel provided ineffective assistance.

"To support a claim for ineffective assistance of counsel, petitioner must demonstrate that his trial counsel's performance 'fell below an objective standard of reasonableness,' and that he was prejudiced by counsel's deficient acts or omissions." *Johnson v. United States*, 313 F.3d 815, 817-18 (2d Cir. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984)). Defendant makes two new objections to the serious bodily injury enhancement. For the reasons discussed below, these new objections do not persuade me that it was error to apply the enhancement. Thus, even if counsel failed to make the strongest possible objections at sentencing, defendant cannot show prejudice.

First, defendant argues that "if a serious bodily injury enhancement is added along with a § 2241 enhancement for conduct designed to ensure the continued prostitution of sex trafficking victims, double counting has occurred." ECF No. 240 at 18. I disagree. "[T]he application notes to the Guideline advise that 'for purposes of this guideline, 'serious bodily injury' means conduct *other than criminal sexual abuse, which already is taken into account in the base offense level.*'" *United States v. Rivera*, 799 F.3d 180, 187 (2d Cir. 2015) (quoting U.S.S.G. § 2A3.1(b)(4)

application note 1) (emphasis in original).  "Impermissible double counting occurs when one part of the guidelines is applied to increase a defendant's sentence to reflect the kind of harm that has already been fully accounted for by another part of the guidelines."  *United States v. Volpe*, 224 F.3d 72, 76 (2d Cir. 2000) (quoting *United States v. Napoli*, 179 F.3d 1, 12 n.9 (2d Cir.1999)).  But "multiple adjustments may properly be imposed when they aim at different harms emanating from the same conduct."  *Id.*  Here, the PSR alleged that the offense involved conduct described in 18 U.S.C. § 2241(a), thus warranting a four-point enhancement under Guidelines § 2A3.1(b)(1) because defendant "used force and threats of serious bodily injury against Jane Doe #1 . . . to ensure their continued prostitution.  Notably . . . [he] raped and beat Jane Doe #1 on multiple occasions."  PSR ¶ 50.  The four-point enhancement for conduct described in 18 U.S.C. § 2241(a) thus adds points for "using force against" another person or "threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping." 18 U.S.C. § 2241(a); *see United States v. Perez*, No. 20-1982-CR, 2022 WL 1421408, at *3 (2d Cir. May 5, 2022).  The two-point enhancement for serious bodily injury, meanwhile, applies only "if the victim sustained serious bodily injury." U.S.S.G. §2A3.1(b)(4)(B).  They thus "aim at different harms emanating from the same conduct," *Volpe*, 224 F.3d at 76, namely the use of force or threatening of injury

5

in the first provision, and the actual sustaining of serious bodily injury in the second provision.

Additionally, the tattooing of the victim here caused serious bodily injury apart from the criminal sexual abuse, meaning its application complies with Guidelines § 2A3.1(b)(4) application note 1. *See United States v. Jim*, 786 F.3d 802, 815 (10th Cir. 2015) ("The language of the application note does not preclude the sentencing court, in deciding whether a sexual offender's victim suffered serious bodily injury, from considering injuries resulting directly from the sexual abuse.").

Second, defendant argues that "there was also inadequate evidence to establish critical factual elements underlying any application of this adjustment here." ECF No. 240 at 19. Defendant's arguments attempting to cast doubt on the origins of the tattoo, ECF No. 240 at 19-21, do not persuade me that it was error to rely on the declarations submitted by the government after sentencing. Indeed, the declarations submitted by the U.S. Attorney from a DHS agent (who interviewed Jane Doe #1) and a dermatologist provide sufficient facts to establish that the defendant ordered Jane Doe #1 to get a tattoo and that she experienced extreme pain in both the application and removal of the tattoo. ECF Nos. 135, 136.

The defendant also asks that I consider arguments he made on appeal to the Second Circuit; namely, that I improperly permitted the U.S. Attorney to supplement the record after sentencing but before the entry of judgment. ECF No. 240 at 22-24.

6

I find that counsel's failure to object to the sentencing procedure on this ground did not constitute ineffective assistance of counsel.

Federal Rule of Criminal Procedure 32(i)(3)(B) requires that "[a]t sentencing, the court . . . must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Indeed, at sentencing, after hearing argument and after the AUSA described the tattoo and informed me that "agents . . . were able to obtain a picture of the tattoo," I ruled on this issue: "I will do it under extreme physical pain on the condition that you provide me, before I enter the judgment with evidence of that because I'm not prepared to take judicial notice of it, and it all depends on what pain she suffered." Sentencing Tr. at 51. I am not convinced that defendant's counsel, in failing to object to this ruling or to the government's later submissions, "was unreasonable under the 'prevailing professional norms,'" *United States v. Matos*, 905 F.2d 30, 32 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 688). Regardless, the defendant cannot show prejudice because the government's declarations after sentencing further supported my decision at sentencing. Thus, there is not "a reasonable probability that 'the result of the proceeding would have been different'" if counsel had objected. *Id*. (quoting *Strickland*, 466 U.S. at 694).

## II.      Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)

The defendant also seeks a reduction of his sentence, seemingly pursuant to 28 U.S.C. § 2241 and 18 U.S.C. § 3582(c).  ECF No. 240 at 24-29.  Defendant contends that he has not received full credit for the time in custody between his arrest and the imposition of his sentence in the Eastern District of New York, ECF No. 240 at 25; ECF No. 245 at 7-8, and that the onerous conditions of his incarceration during the pandemic, combined with his age and rehabilitation, warrant a sentencing reduction.  ECF No. 245 at 6.

The defendant is not clear under what procedural authority he seeks a reduction of his sentence based on the Bureau of Prisons' ("BOP") failure to give him full credit for his time spent in custody since his arrest.  *See* ECF No. 245 at 9 (asking the court to grant relief "pursuant to 28 U.S.C. § 2255, 18 U.S.C. § 3582(c), and U.S.S.G. § 5G1.3(b)(1)").  As an initial matter, I cannot consider defendant's motion if it is requested pursuant to 28 U.S.C. § 2241 because the defendant is no longer incarcerated in this district.  *See United States v. Delacruz*, No. 16-CR-262-3 (JGK), 2022 WL 785073, at *1 (S.D.N.Y. Mar. 15, 2022); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("The plain language of the habeas statute thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement.").  He is currently housed at FCI Otisville, not within the Eastern District of New York.

Nor can I, as the defendant suggests, simply reduce his sentence based on Guidelines § 5G1.3(b)(1) alone.  ECF No. 245 at 8.

Nonetheless, I may consider the defendant's motion pursuant to the First Step Act.  Under § 3582(c)(1)(A), "once a defendant has exhausted the [BOP] administrative procedures . . . the statute allows for any sentence reduction—up to and including immediate release—so long as that that reduction is warranted by extraordinary and compelling reasons, consistent with the applicable policy statement, and is appropriate in light of the § 3553(a) factors." *Reynolds v. United States*, No. 99-CR-520 (NGG), 2022 WL 1444167, at *4 (E.D.N.Y. May 6, 2022).

As to the exhaustion requirement, the court may "modify a term of imprisonment" on the defendant's motion only after "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  "Not a jurisdictional limitation, § 3582(c)(1)(A)'s exhaustion requirement is a 'claim-processing rule[ ]' and accordingly 'may be waived or forfeited' by the government." *United States v. Saladino*, 7 F.4th 120, 123 (2d Cir. 2021) (quoting *Hamer v. Neighborhood Hous. Servs.*, 138 S. Ct. 13, 17 (2017)). Courts are divided as to whether the exhaustion requirement is subject to equitable exceptions once it has been invoked by the government. *Compare Saladino*, 7 F.4th

9

at 125 (Menashi, J., concurring) *with United States v. Scparta*, 567 F. Supp. 3d 416, 426 (S.D.N.Y. 2020).

The defendant has satisfied the exhaustion requirement. On March 10, 2023, the Warden of FCI Hazelton denied his request for compassionate release, which the defendant argues came after he was transferred to another facility. ECF No. 247-1 at 1. Although there is nothing in the record that shows that the defendant appealed this decision, his counsel submitted a similar application for a sentence reduction to the Warden of his current facility, FCI Otisville, on March 16, 2023. ECF No. 246-1. As of April 19, 2023, the defendant had not received a response to that application, thus amounting to a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," and meeting the exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). In any event, I agree with Judge Nathan's cogent analysis that "the statute's exhaustion requirement is amenable to equitable exceptions." *Scparta*, 567 F. Supp. 3d at 426. Here, as explained below, a statute appears to dictate that defendant's time in custody prior to sentencing will not be credited to two sentences. Thus, appealing further to the BOP would be futile.

Here, the defendant was originally arrested in the Northern District of Georgia on May 21, 2013. PSR at 1. In January 2015, he was sentenced in that case – for conduct related to the instant offense – to 262 months imprisonment. *Id.* at ¶ 144. He was then transferred to the Eastern District of New York on January 5, 2016,

where, after a guilty plea, I sentenced the defendant in January 2019 to 293 months imprisonment to run concurrently with the sentence in the Northern District of Georgia.  ECF No. 186.

At sentencing, defense counsel "asked for a lower sentence" out of concern "that the Bureau of Prisons would not properly . . . give [the defendant] credit . . . [for] the five years he's already served in Georgia."  Sentencing Tr. at 62.  Based on that concern, at sentencing, I directed that the judgment would reflect that defendant's sentence in this case would begin to run as of May 21, 2013, the date of his initial arrest.  Sentencing Tr. at 62-63.  Moreover, at sentencing, the government "agree[d] completely that [the sentences] needed to be concurrent time" because the Eastern District of New York and the Northern District of Georgia convictions encompassed "some of the same criminal conduct."  Sentencing Tr. at 63.  The government added that if the BOP miscalculated the sentence later, it could be raised in the form of a section 2241 petition.  Sentencing Tr. at 64.

Defendant now contends that such an error has been made, and he has not received full credit for the time in custody between his arrest and the imposition of his sentence in the Eastern District of New York.  ECF No. 240 at 25.  Defendant argues that the BOP's "computation appears to have erred" in assigning a "total term in effect" of "28 years, 4 months and 13 days," which amounts to about 340 months. ECF No. 247 at 2.

11

Defendant appears to be correct that the BOP has not calculated his sentence to credit all the time he spent in custody between his arrest in 2013 and the imposition of his sentence in the Eastern District of New York in 2019. BOP has assigned the defendant with jail credit for the time between defendant's arrest on May 21, 2013 and his sentencing in the Northern District of Georgia on January 21, 2015, amounting to 611 days. ECF No. 247-1 at 4. In other words, defendant does not appear to be receiving credit for the time between his sentencing in the Northern District of Georgia on January 21, 2015, and his sentencing before me on January 4, 2019. Indeed, the BOP's calculated aggregate sentence of 340 months exceeds the 293-month sentence that I imposed by approximately 47 months, which is the amount of time between January 21, 2015 and January 4, 2019.

The U.S. Attorney does not object to crediting the defendant with all the time served since his arrest, but simply suggests that "the Court should issue an order directing the Bureau of Prisons to comply with its original judgment" that the defendant's sentence should "reflect credit for the time served going back to the date of the defendant's arrest." ECF No. 244 at 9. I am skeptical that the U.S. Attorney's solution would suffice in this case for at least two reasons. First, under 18 U.S.C. § 3585(b), time in custody prior to sentencing will not be credited to two sentences. *See Lopez v. Terrell*, 654 F.3d 176, 178 (2d Cir. 2011). Second, the "precise date on which a sentence begins" is a decision that falls to the BOP. *United States v.*

12

*Labeille-Soto*, 163 F.3d 93, 98 (2d Cir. 1998).   Indeed, the Second Circuit has concluded that a district court erred when it "ordered that [defendant's] sentence be deemed to have commenced on, and to run from" a precise date.  *Id.* at 100; *see also United States v. April*, 854 F. App'x 410, 415 (2d Cir. 2021).

Nonetheless, the Sentencing Guidelines allow a sentencing judge to "adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment [resulting from related conduct] if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons."  U.S.S.G. 5G1.3(b)(1).   Indeed, in the defendant's plea agreement, the parties agreed that "the term of imprisonment the defendant is currently serving involved conduct that is relevant to the instant offenses of conviction and which results in an increase in the offense level for the instant offense (*see* § 5G1.3)."  ECF No. 240-1 at 3.  And, at sentencing, the government conceded that the Northern District of Georgia and Eastern District of New York cases involved "some of the same criminal conduct," and argued that the BOP would credit the defendant with time in custody since his arrest.  Sentencing Tr. at 63-64.

In sum, when fashioning the defendant's original sentence of 293 months, I expected that he would receive full credit for his time in prison since his arrest on May 21, 2013.  Sentencing Tr. at 63.  Now, it appears that the defendant is not receiving credit for 47 months of that time, a calculation that I do not expect the BOP

13

to correct because it may not be an "error" at all, but rather a function of the way sentences are calculated. And if I had known that he would not receive full credit at the time of sentencing, the Sentencing Guidelines would have allowed me to take that fact into consideration. *See* U.S.S.G. 5G1.3(b)(1). The First Step Act, 18 U.S.C. § 3582(c), gives me the discretion to consider these facts and to remedy the issue that the defendant now identifies by appropriately reducing his sentence. *See Reynolds*, 2022 WL 1444167, at *4.

In addition, I consider the defendant's history of confinement at Brooklyn MDC during the COVID pandemic and his "record of clear conduct." ECF No. 246-1. As the defendant explains, he spent at least 33 months of his sentence at the Brooklyn MDC "during the severe restrictions and harsher than usual conditions created by the COVID pandemic." ECF No. 240 at 27, 29. Indeed, the pandemic has made "incarceration harsher and more punitive than would otherwise have been the case." *United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020). The harshness of incarceration at MDC is a relevant factor in the analysis even though it is "insufficient on its own" to justify a reduction of the defendant's sentence. *Id.*

These circumstances provide an "extraordinary and compelling" reason to reduce defendant's sentence by 47 months, which is the amount of time in custody for which the defendant is not receiving credit against the sentence that I imposed.

A reduction of 47 months results in a total term of 246 months, which is still within the applicable Guidelines range of 235 to 293 months.  That sentence remains an appropriate one in light of the § 3553(a) factors considering the seriousness of the offense and outrageous manner in which it was carried out, as well as the considerations of Guidelines § 5G1.3(b)(1), discussed above.

## CONCLUSION

The petition under 18 U.S.C. § 2255 is DENIED, and the motion for a reduction of the defendant's sentence under 18 U.S.C. § 3582(c) is GRANTED. Martinez-Rojas's sentence is reduced by 47 months.


**SO ORDERED.**

                                                              *Edward R. Korman*
Brooklyn, New York                           Edward R. Korman
July 31, 2023                                       United States District Judge